UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERESA SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 1782 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| BCTGMI LOCAL #1 and DONALD WOODS, | ) | |
| | ) | |
| Defendants. | ) | |

# OPINION AND ORDER

Plaintiff Teresa Sanchez, who is of Mexican national origin, allegedly encountered pervasive harassment and retaliation while serving as a union steward for Defendant Local Union No. 1, Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, AFL-CIO-CLC ("Local #1"). Proceeding *pro se*, Sanchez filed this lawsuit against Local #1 and its president, Donald Woods, on March 13, 2020. In her second amended complaint ("SAC"), she brings discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1981. Defendants have filed a combined motion to dismiss and for partial summary judgment. Sanchez has agreed to the dismissal of all claims against Woods, so the Court dismisses Woods from this action. Because Sanchez filed her Title VII and ADA claims more than ninety days after receiving a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC") and equitable tolling does not apply, the Court dismisses the Title VII and ADA claims with prejudice. But because Sanchez has provided Local #1 with sufficient notice of her § 1981 claims, the Court allows those to proceed to discovery.

# BACKGROUND

I.    **Sanchez's Employment with Local #1**[1]

Sanchez, who was born in Mexico, worked at a Tootsie Roll factory. Local #1 represents workers at confectionery companies and bakeries in Illinois, Iowa, and Indiana, including Tootsie Roll employees. Woods serves as Local #1's president.

In January 2009, Sanchez took on the role of union steward for Local #1. In April 2012, Local #1 denied Sanchez a promotion to an available chief steward position, appointing Angel Ochoa instead. Ochoa had previously lost several steward elections and had served less time as a steward than Sanchez. When Ochoa retired, Local #1 appointed James Sterling as the chief steward instead of Sanchez. Sterling was younger and less senior than Sanchez.

In 2013, Sanchez refused to perjure herself in a lawsuit involving Local #1. Sanchez also filed NLRB charges against Local #1 for retaliation based on her refusal to sign a union contract until certain discrepancies were fixed. Sanchez also challenged certain of Woods' actions against Tootsie Roll employees and filed complaints that Local #1 did not fairly represent Tootsie Roll employees.

In response, Local #1 took retaliatory action against Sanchez. Woods verbally suspended Sanchez from her union role in June 2013 without notice or hearing based on false accusations made by Charlotte Harris, another union steward. In September 2017, again without notice or hearing, Local #1 suspended Sanchez from her role as an executive board member for a year because she missed a number of executive board meetings. Other executive board members who missed sessions did not receive the same treatment. Local #1 also had Tootsie Roll post Sanchez's suspensions at the entrance to the facility instead of on the Local #1 bulletin boards

---

[1] The Court takes the facts with respect to Sanchez's employment with Local #1 from the SAC and exhibits attached thereto and presumes them to be true for the purpose of resolving the motion to dismiss the § 1981 claims. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

inside. And Local #1 denied Sanchez payment for work she performed on the union's behalf from 2017 to 2018 while she was on workers' compensation.

Local #1 leadership and members harassed and retaliated against Sanchez in other ways as well. For example, Local #1 consistently misspelled her first name as "Theresa" despite her constant corrections that her name did not include an "h." Another elected steward, Jose Gomez, spread lies about Sanchez and demeaned her to her coworkers. Local #1's treasurer, Beth Zavala, prevented Sanchez from leaving the union hall during a contract vote. And Woods and Local #1 business agent Rochelle Ross accused Sanchez in Tootsie Roll steward meetings of failing to fulfill her duties. Local #1 also rigged votes against Sanchez in an election to choose representatives to a union convention in Las Vegas.

Ultimately, Local #1 removed Sanchez from her elected steward position after she questioned how Local #1 used money it had raised from various fundraisers. Woods did not allow Sanchez to present witnesses in her defense at the subsequent hearing. Local #1 then sent letters to all Tootsie Roll union members stating that Local #1's executive board removed Sanchez because she spread lies about its members and fundraisers. Tootsie Roll union members petitioned for Sanchez's reinstatement, but Local #1 did not take such action.

## II. Sanchez's Exhaustion of Administrative Remedies[2]

Sanchez filed a charge of discrimination with the EEOC against Local #1 on August 23, 2019. The charge was also cross-designated and automatically filed with the Illinois Department of Human Rights ("IDHR"). In her charge, Sanchez complained of sex, national origin, and disability discrimination as well as retaliation, indicating that the discrimination had begun at the earliest on October 27, 2018 and continued through August 23, 2019.

---

[2] The Court derives the facts related to exhaustion from the Joint Statement of Undisputed Material Facts, as well as Sanchez's additional declaration. The Court takes all facts in the light most favorable to Sanchez, the non-movant.

On August 26, 2019, the IDHR sent Sanchez a letter concerning the cross-designation and filing of her EEOC charge with the IDHR. That letter stated, in relevant part:

> Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. **After the EEOC issues its findings**, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number.

Doc. 37-1 at 65.

On August 29, 2019, the EEOC sent Sanchez a Dismissal and Notice of Rights (the "August 29 EEOC Notice") for the EEOC charge. The August 29 EEOC Notice indicated that the EEOC had closed its file because it could not conclude that a violation occurred. The August 29 EEOC Notice further stated:

> **Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act**: This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Doc. 37-1 at 17. Sanchez received the August 29 EEOC Notice shortly after it was mailed.

On September 23, 2019, the IDHR received from Sanchez the August 29 EEOC Notice, the August 26 IDHR letter, and a handwritten note requesting that the IDHR investigate her charge. The IDHR sent Sanchez a letter on October 23, 2019, confirming her request that the IDHR investigate her charge under the Illinois Human Rights Act. On November 13, 2019,

Sanchez mailed the IDHR an opt out request form, which indicated that she wished to opt out of the investigation and administrative processing of her charge. In early December 2019, Sanchez made several efforts to discuss her IDHR claim with IDHR representatives, ultimately learning that it would shortly send her a notice confirming her opt out request. The IDHR then sent her a Notice of Opt Out dated December 10, 2019 (the "December 10 IDHR Notice"). The December 10 IDHR Notice stated that Sanchez had ninety-five days from the date of the notice to bring an action in the appropriate circuit court.

Sanchez filed this lawsuit on March 13, 2020. IDHR issued an Order of Administrative Dismissal Pursuant to 7-109.1 on April 7, 2020, indicating that the IDHR had ceased its investigation and dismissed Sanchez's IDHR charge because she had initiated litigation.

## ANALYSIS

I. **Motion for Summary Judgment on Title VII and ADA Claims**

   A. **Legal Standard**

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above

to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

    B.    **Timeliness of Title VII and ADA Claims**

A plaintiff bringing Title VII and ADA claims "may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)) (Title VII); *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (ADA). A plaintiff has ninety days from receipt of a right to sue letter from the EEOC to file a Title VII or ADA claim. *Houston v. Sidley & Austin*, 185 F.3d 837, 838–39 (7th Cir. 1999) ("Under the ADA [and] Title VII, a plaintiff must file her suit within 90 days from the date the EEOC gives notice of the right to sue.").

Local #1 argues that Sanchez cannot pursue her Title VII and ADA claims because she filed suit over ninety days after she received her right to sue letter from the EEOC. Sanchez filed her EEOC charge on August 23, 2019. The EEOC issued a right to sue notice to Sanchez on August 29, 2019, which Sanchez agrees she received shortly thereafter. But she only filed suit

6

on March 13, 2020, more than ninety days after receiving the August 29 notice, making her suit untimely. *Id.*

Under certain circumstances, however, equitable tolling may allow a plaintiff to proceed on a time-barred claim. *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999). Equitable tolling applies where a plaintiff "has made a good faith error (*e.g.*, brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (quoting *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984)).

Sanchez acknowledges that she filed this case more than ninety days after she received the August 29 EEOC Notice. Nonetheless, she argues that the Court should apply equitable tolling to allow her to proceed on her Title VII and ADA claims. Sanchez points out that she filed suit within ninety-five days of the December 10 IDHR Notice, maintaining that she believed that she complied with the requirements set out in that letter. In other words, she contends that the IDHR's review of her charge tolled the ninety-day time limit for filing suit on her Title VII and ADA claims. But this belief was mistaken. *See Perkins v. Fed. Home Loan Bank of Chicago*, No. 18 C 06418, 2019 WL 4958237, at *3 & n.5 (N.D. Ill. Oct. 8, 2019) (pendency of IDHR investigation does not toll ninety-day window for filing federal claim following the EEOC's issuance of a right to sue notice). As the August 29 EEOC Notice set forth, Sanchez had ninety days from receipt of that notice to file suit on her *federal* claims. That notice did not include any exceptions or indications that the IDHR's continued investigation tolled the window.

Although Sanchez argues that her communications with the IDHR led her to believe she did all she needed to preserve her claim, she provides no evidence to suggest that the IDHR actively misled her. None of the IDHR communications indicate that the IDHR investigation tolled the ninety-day filing window for her federal claims. Instead, the IDHR notices specifically indicate that the IDHR's investigation only concerned potential claims under the Illinois Human Rights Act. Therefore, Sanchez has no basis to argue that the IDHR "lull[ed]" her into thinking that she did not need to assert her federal claims at an earlier time. *Cf. Prince v. Stewart*, 580 F.3d 571, 574–75 (7th Cir. 2009) (equitable tolling may be appropriate where a court "lull[s]" a *pro se* litigant "into thinking he didn't have to refile his complaint" or has "misled a party regarding the steps that the party needs to take to preserve a claim" (citations omitted)); *Alsaras v. Dominick's Finer Foods, Inc.*, 248 F.3d 1156 (Table), 2000 WL 1763350, at *2 (7th Cir. Nov. 22, 2000) (equitable tolling could apply where EEOC employee provided the plaintiff with incorrect information about the time she had to file an EEOC charge, noting that "[t]his circuit, as well as others, has held that when an administrative agency misleads a complainant, particularly one who is proceeding pro se, equitable tolling may be justified").

Instead, all that Sanchez has shown is that she made a mistake in calculating the filing window for her Title VII and ADA claims. Such mistakes, even by *pro se* plaintiffs, do not support equitable tolling. *See Schmidt v. Wis. Div. of Vocational Rehab.*, 502 F. App'x 612, 614 (7th Cir. 2013) ("[M]istakes of law (even by plaintiffs proceeding pro se) generally do not excuse compliance with deadlines or warrant tolling a statute of limitations."); *Threadgill*, 269 F.3d at 850–51 ("While Threadgill's failure to understand the implications of the right-to-sue notice elicits sympathy, '[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular

litigants.'" (alteration in original) (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984))); *Lewis v. Pretium Packaging, L.L.C.*, No. 14 C 6444, 2016 WL 3075267, at *2 (N.D. Ill. June 1, 2016) ("Any errors or confusion on Plaintiff's part regarding the filing deadline may well have been sincere, but they do not merit the extraordinary remedy of equitable tolling."). Because Sanchez has not provided a basis for equitable tolling, she cannot proceed with her Title VII or ADA claims. *See Lewis*, 2016 WL 3075267, at *2 (equitable tolling not warranted based on plaintiff's belief that IDHR filing tolled the time period for filing his federal claims).

## II.     Motion to Dismiss the Section 1981 Claims

### A.     Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B.   **Sufficiency of the Allegations**

With respect to the remaining § 1981 harassment and retaliation claims, Local #1 argues that the SAC does not provide it with fair notice of these claims because Sanchez has included a laundry list of facts without specifying when they occurred or how they relate to her legal claims.[3] Local #1 argues that Sanchez's failure to specify dates means that many of her complaints occurred outside of the applicable statute of limitations.

Rule 8(a)(2) requires that a complaint contain "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are unnecessary, but the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015). "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). Thus, to sufficiently allege an employment discrimination claim, a plaintiff need only identify the type of discrimination that occurred, by whom, and when. *Huri*, 804 F.3d at 833. In addressing whether Sanchez has provided Local #1 with fair notice of her claims, the Court liberally construes the SAC given Sanchez's *pro se* status. *Erickson v Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

Given the minimal pleading requirements for employment discrimination claims and the liberal construction afforded to *pro se* plaintiffs, the Court finds that, although not a model of

---

[3] Because Local #1 only challenges the vagueness of Sanchez's § 1981 claims, the Court does not address any other potential deficiencies.

clarity, Sanchez has sufficiently provided Local #1 with fair notice of the § 1981 claims. Sanchez's complaint includes the basic required information: the type of discrimination (harassment and retaliation based on her Mexican heritage and protected activity); the whom (Woods and other named Local #1 members); and the when (from 2009 to the time she filed her EEOC charge). *See Huri*, 804 F.3d at 834. True, the SAC does not include specific dates for each alleged fact, but such specificity is not required at the pleading stage. *Id.* at 832, 834. And while Local #1 raises concerns about the statute of limitations, a plaintiff need not anticipate this affirmative defense in her complaint. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Even so, at least some of the conduct of which Sanchez complains occurred within four years of the filing of this case. Further, her harassment claims amount to a continuing violation, meaning that actions outside of the statute of limitations are nonetheless actionable given that some of the conduct occurred within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). And, for purposes of the retaliation claim, any untimely conduct may serve as background evidence. *Id.* at 113. Further resolution of the timeliness of Sanchez's claims and her ability to prove them must await another day. At this stage, the SAC provides Local #1 with fair notice of the § 1981 claims and the grounds upon which they rest, making dismissal premature. *See Huri*, 804 F.3d at 834 (dismissal of hostile work environment claims would be premature where the plaintiff pleaded facts "that *could* have happened and which discovery can be reasonably expected to reveal").

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' combined motion to dismiss and for partial summary judgment [35]. The Court dismisses

Woods as a Defendant. The Court dismisses the Title VII and ADA claims (Counts 1–3) with prejudice.

Dated: May 10, 2021

SARA L. ELLIS
United States District Judge